IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

YVETTE PENN,                          )
                                      )
            Plaintiff,                )
                                      )
        v.                            )       No. 1:08cv620 (AJT/TRJ)
                                      )
THE AEROSPACE CORPORATION,            )
                                      )
            Defendant.                )
_____)

## MEMORANDUM OPINION

This is an employment discrimination action brought pursuant to Title VII of the

Civil Rights Act of 1964, 42 U.S.C. § 2000e, and 42 U.S.C. § 1981. It is presently before

the Court on Defendant's Motion for Summary Judgment, filed on November 7, 2008.

Both parties have filed extensive memoranda of law supporting their respective positions,

and the Court heard oral argument on the motion on January 23, 2009. For the reasons

stated in open court and the reasons set forth below, the Court will grant Defendant's

Motion for Summary Judgment.

### I. BACKGROUND

On June 13, 2008, Plaintiff Yvette Penn ("Penn") filed this action against her

former employer, The Aerospace Corporation ("Aerospace"). Plaintiff's Complaint for

Racially Discriminatory Transfer and Discharge ("Complaint") asserts four causes of

action against Aerospace: (1) Racially Discriminatory Transfer in Violation of Title VII;

(2) Racially Discriminatory Transfer in Violation of Title 42 U.S.C. § 1981; (3) Racially

Discriminatory Discharge in Violation of Title VII; and (4) Racially Discriminatory Discharge in Violation of 42 U.S.C. § 1981.

The Defendant has now moved for summary judgment under Fed. R. Civ. P. 56. The Defendant asserts that summary judgment is proper because Plaintiff cannot make a prima facie case of race or gender discrimination on any of her claims. Specifically, the Defendant argues that (1) Plaintiff was not subjected to an adverse employment action; (2) Plaintiff was not performing at a satisfactory level; and (3) no other similarly situated employees received more favorable treatment. Defendant further asserts that even if Plaintiff has established a prima facie case of discrimination, Defendant has met its burden of articulating legitimate, non-discriminatory reasons for the challenged conduct and Plaintiff has failed to prove that the asserted non-discriminatory reasons are pretext for discrimination.

## II. STATEMENT OF FACTS

Plaintiff is an African-American woman. Stipulated Facts at ¶ 5. Defendant Aerospace operates a non-profit Federally Funded Research and Development Center ("FFRDC") under a contract with the United States Department of Defense. *Id.* at ¶ 1.

Plaintiff began working for Aerospace in July 1999 as a systems administrator in the Corporate Information Resources Division ("CIRD") at Aerospace's Chantilly, Virginia location. *Id.* at ¶ 6. In her role as a CIRD systems administrator, Plaintiff supported different departments, including Aerospace's Geo-Intell Systems Directorate ("GSD"). *Id.* at ¶ 7. The GSD group provides support to the National Geospatial-Intelligence Agency ("NGA"). *Id.* at ¶ 11.

2

In 2004, Aerospace began development of a new computer laboratory, the Center for Advanced Processing and Exploitation (the "CAPE lab"). *Id.* at ¶ 12. The CAPE lab was primarily funded by NGA. Garn Dep., Pl.'s Ex. B at 47-48. In 2005, Dr. Mark Hamilton, the Systems Director of the Sensor Integration Department, one of the three departments in the GSD group at Aerospace, approached Plaintiff and encouraged her to apply for a new position as a full-time systems administrator for the CAPE lab. Stipulated Facts at ¶ 15; Penn. Decl. at ¶ 2; Penn Dep., Def.'s Ex. A at 84-85; Hamilton Dep., Def.'s Ex. D at 75-76. Plaintiff ultimately accepted the position in mid-June 2005. Penn Dep., Def.'s Ex. A at 46; Hamilton Dep., Def.'s Ex. D at 72.[1] The position was a promotion that resulted in a grade level increase and a salary increase. Stipulated Facts at ¶ 16. As systems administrator for the CAPE lab, Plaintiff's responsibilities included purchasing equipment for the new facility, working on a security plan, and setting up the lab. *Id.* at ¶ 15. Plaintiff has not asserted any improper conduct or treatment during the first several months of her employment at the CAPE lab. *Id.* at ¶ 14 ("Dr. Garn and Plaintiff had a good relationship during the time that Plaintiff worked for CIRD.").

Plaintiff alleges that her working relationship with Dr. Lynn Garn, the Task Lead for the CAPE lab project, deteriorated in February 2006, after Plaintiff purchased a Hummer H2. Letter from Yvette Penn to Willie C. Bell (Mar. 5, 2007), Def.'s Ex. E at 3. Specifically, Plaintiff alleges that Dr. Garn told her "don't buy that truck; it's not a sound financial decision to make"; "[i]t's a bad investment to make on a vehicle, too costly, too expensive"; and "that is too much truck for you." Penn Decl. at ¶ 4. Plaintiff also alleges

---

[1] The parties do not contest that Plaintiff's new position as a full-time systems administrator for the CAPE lab was a promotion. Def.'s Mem. in Supp. of Mot. for Summ. J. at 4; Pl.'s Mem. in Opp. to Mot. for Summ. J. at 7.

that Dr. Garn micromanaged her work, hovered around her desk, demanded to know her work hours and ordered her to report to work earlier than she had been "as if to suggest that [she] was 'committing time card fraud'" and embarrassed her by announcing to a group of co-workers that she had received a bonus for recommending the hire of a new team member. *Id.* at ¶ 5. Finally, Plaintiff alleges that Dr. Garn did not exhibit the same behavior with white male team members. *Id.*

Plaintiff complained to Dr. Hamilton regarding her interactions with Dr. Garn. *Id.* at ¶ 6. The friction between Plaintiff and Dr. Garn was addressed at various times by Dr. Hamilton. Stipulated Facts at ¶ 18. However, Plaintiff alleges that the objectionable conduct continued. Penn Decl. at ¶ 6.

In October 2006, Plaintiff was notified by Aerospace that the government would no longer fund the system administrator position for the CAPE lab. Stipulated Facts at ¶ 19. Accordingly, Plaintiff's position would no longer exist and Plaintiff's work location was changed to the Washington, D.C. Navy Yard ("Navy Yard") where she was assigned quality assurance duties as of November 1, 2006. *Id.* at ¶ 20. To create this position for Plaintiff, Ms. Stephanie Danahy, the Principal Director of the GSD group, testified that she re-assigned another employee, a Caucasian woman, who had been performing the quality assurance duties to another role in order to facilitate Plaintiff's transfer and her continued employment at Aerospace. Danahy Dep., Def.'s Ex. C at 179-80. The parties do not dispute that Plaintiff maintained the same title, level of pay, and benefits as before November 1, 2006. Stipulated Facts at ¶ 21. At the Navy Yard, Plaintiff shared a cubicle with Ms. Danahy and Aerospace engineers Dr. Gregg Bryant and Mr. Paul Mullenhoff. *Id.* at ¶ 22. In addition to Plaintiff's complaints regarding the accommodations at the

4

Navy Yard, Plaintiff claims that she was not given meaningful work to perform, Penn Decl. at ¶ 9, and that the training that was promised to Plaintiff was never provided, Penn Decl. at ¶¶ 7, 10; Penn Dep., Def.'s Ex. A at 394-95.

In February 2007, Plaintiff was informed that the government no longer required quality assurance support from Aerospace on the CAPE lab program to which Ms. Penn was assigned at the Washington Navy Yard because of a failure of that classified government program. Stipulated Facts at ¶ 26. Aerospace management was not able to identify any other tasks in the department that Plaintiff was qualified to perform. Hamilton Dep., Def.'s Ex. D at 163. On February 28, 2007, Plaintiff received written notice that she would be placed in "Displaced Status" effective March 3, 2007. Stipulated Facts at ¶ 27. While in Displaced Status, Plaintiff received full pay and benefits. *Id.* at ¶ 28. During this time Aerospace management attempted to find a new position for Plaintiff at Aerospace. Danahy Dep., Def.'s Ex. C at 53, 120, 170; Penn. Dep., Def.'s Ex. A, at 423, 453, 458, 470. In fact, Aerospace identified two such other positions, one in her former department, CIRD, but Plaintiff declined to be interviewed or apply for either position. Penn Dep., Def.'s Ex. A, at 97, 148, 448, 453. In mid-April 2007, Plaintiff accepted a new job, at a higher salary, with BAE Systems (which was also located at the Navy Yard) and left her employment with Aerospace, effective April 27, 2007. Stipulated Facts at ¶ 29; Stipulation Regarding Pl.'s Current Work Location; Def.'s Ex. Q at ¶ 2.

On August 10, 2007, Plaintiff filed a discrimination charge against Aerospace with the County of Fairfax Human Rights Commission. The complaint was referred to

the Equal Employment Opportunity Commission ("EEOC"). On April 9, 2008, the

EEOC issued Plaintiff a notice of right to sue. *Id.* at ¶ 32.

### III. STANDARD OF REVIEW

Summary judgment is appropriate only if the record shows that "there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment

as a matter of law." FED. R. CIV. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*, 80 F.3d 954, 958-59 (4th

Cir. 1996). The party seeking summary judgment has the initial burden to show the

absence of a material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A

genuine issue of material fact exists "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. Once a motion for

summary judgment is properly made and supported, the opposing party has the burden of

showing that a genuine dispute exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 586-87 (1986). To defeat a properly supported motion for summary

judgment, the non-moving party "must set forth specific facts showing that there is a

genuine issue for trial." *Anderson*, 477 U.S. at 247-48 ("[T]he mere existence of *some*

alleged factual dispute between the parties will not defeat an otherwise properly

supported motion for summary judgment; the requirement is that there be no *genuine*

issue of *material* fact.") (emphasis in original). Whether a fact is considered "material" is

determined by the substantive law, and "[o]nly disputes over facts that might affect the

outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Id.* at 248. The facts shall be viewed, and all reasonable inferences drawn, in

the light most favorable to the non-moving party. *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

## IV. ANALYSIS

**A.**   **"Mixed-Motive" Analysis and the *McDonnell Douglas* Burden-Shifting Framework**

Title VII makes it "an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). 42 U.S.C. § 1981, like Title VII, prohibits discrimination in the workplace on the basis of race.

There are two methods for establishing a claim of employment discrimination. *See U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714 n.3 (1983).[2] A plaintiff may meet this burden under the ordinary standards of proof by direct and indirect evidence relevant to and sufficiently probative of the issue. *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277, 284 (4th Cir. 2004); *EEOC v. Clay Printing Co.*, 955 F.2d 936 (4th Cir. 1992); *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Under this mode of proof, a plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Rhodes v.*

---

[2] The standard governing the burden and order of proof in a Title VII case applies equally to cases arising under 42 U.S.C. § 1981. *General Bldg. Contractors Ass'n v. Pa.*, 458 U.S. 375 (1982); *see also Hawkins v. Pepsico, Inc.*, 203 F.3d 274, 278 (4th Cir. 2000) (*McDonnell Douglas* applies to § 1981 actions); *Watson v. Guitierrez*, 2006 U.S. Dist. LEXIS 42267, at *5-6 (E.D. Va. June 6, 2006) (applying the *McDonnell Douglas* framework § 200e-2(a)(1) actions).

*F.D.I.C.*, 257 F.3d 373, 391-92 (4th Cir. 2001); *Fuller v. Phillips*, 67 F.3d 1137, 1142 (4th Cir. 1995). In "mixed-motive" cases it is sufficient for the individual to demonstrate that the employer was motivated to take the adverse employment action by both permissible and forbidden reasons. *Hill*, 354 F.3d at 284. Where other non-discriminatory factors for termination exist, a plaintiff must present sufficient direct or indirect evidence to demonstrate that a "protected trait . . . 'actually played a role in the employer's decisionmaking process and had a determinative influence on the outcome.'" *Id.* at 286; *see also* 42 U.S.C. § 2000e-2(m); *Desert Palace Inc. v. Costa*, 539 U.S. 90, 102 (2003); *Worden v. SunTrust Banks, Inc.*, 549 F.3d 334, 342 n.7 (4th Cir. 2008).[3]

Alternatively, if such evidence of discriminatory animus is not available, a plaintiff may prove discrimination in accordance with the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248 (1981). The *McDonnell Douglas* framework contemplates a burden-shifting regime where the plaintiff bears the initial burden of pleading a prima facie case of discrimination. *See Bryant v. Aiken Reg. Med. Ctrs. Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003). To establish a prima facie case, plaintiff must demonstrate that (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her job and that her job performance was satisfactory; and (4) she was treated differently from similarly situated employees. *McDonnell Douglas*, 411 U.S. at 800-04; *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 268 (4th Cir. 2005). If a plaintiff can prove a prima facie case of

---

[3] An employer may limit the remedies available to the plaintiff by demonstrating that it would have taken the same action in the absence of the discriminatory motivation. 42 U.S.C. § 2000e-5(g)(2)(B).

employment discrimination, "[t]he burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for the employment action. *McDonnell Douglas*, 411 U.S. at 802; *see also Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).[4] Should the defendant meet this burden, the presumption of discrimination raised by the plaintiff's prima facie case is rebutted and the plaintiff must then show that the defendant's proffered legitimate, non-discriminatory reason is pretextual. *See Burdine*, 450 U.S. at 254-56; *Moore v. City of Charlotte*, 754 F.2d 1100, 1106 (4th Cir. 1985).[5] Despite the burden-shifting framework, the ultimate burden of proof remains with the plaintiff. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-07 (1993); *see also Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996).

**B.     Mixed-Motive Theory**

Plaintiff contends that the decisions to transfer Plaintiff to the Navy Yard and to place Plaintiff in displaced status (which could lead to her termination as provided in Aerospace's policies regarding displaced status) were motivated by both legitimate and discriminatory reasons and that summary judgment in favor of Defendant is inappropriate. Under a "mixed-motive" proof method, a plaintiff must demonstrate that the protected trait was a motivating factor in making an adverse employment decision.

---

[4] This burden is one of production, not persuasion, and thus "it can involve no credibility assessment." *See Burdine*, 450 U.S. at 256.

[5] A plaintiff may attempt to establish that he or she was a victim of intentional discrimination, for example, "by showing that the employer's proffered explanation is unworthy of credence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 120 S. Ct. 2097, 2106 (2000). However, an employer would be entitled to summary judgment if "the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 2109.

*Hill*, 354 F.3d at 284, 285 n.2. A plaintiff is not required to demonstrate that forbidden reasons were the sole motivating factor, as long as they were motivating factors. *Id.* at 284. However, "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision" must be provided. *E.E.O.C. v. Warfield-Rohr Casket Co.*, 364 F.3d 160, 163 (4th Cir. 2004). "The ultimate question in every employment discrimination case involving a claim of disparate treatment is whether the plaintiff was the victim of intentional discrimination." *Reeves*, 530 U.S. at 153.

Plaintiff contends that statements made by Dr. Garn reflect a discriminatory attitude sufficient to overcome Defendant's motion for summary judgment under a mixed-motive analysis. Specifically, Plaintiff relies on Dr. Garn's comments regarding Plaintiff's purchase of a Hummer and Dr. Garn's general attitude toward Plaintiff at work. The Court does not view the substance of the alleged comments as evidence of racial or gender animus.

In any event, even if the statements and conduct of Dr. Garn are considered evidence of discrimination, Dr. Garn must be considered an "actual decisionmaker" before such evidence can be imputed to Aerospace. Plaintiff contends that under *Hill v. Lockheed Martin Logistics Management, Inc.*, 354 F.3d 277 (4th Cir. 2004), Dr. Garn is an "actual decisionmaker" whose alleged comments can be imputed to Aerospace. Mem. in Opp. to Mot. for Summ. J. at 24. However, Penn has not submitted any evidence that Dr. Garn conducted or approved her performance reviews, had any authority over her salary, had disciplinary authority over Plaintiff, or had authority to make employment decisions regarding Plaintiff. In fact, the record is clear that Dr. Hamilton and Ms.

Danahy conducted Plaintiff's performance reviews, approved her salary, and had disciplinary authority over Plaintiff. Def.'s Ex. A, Penn Dep. at 46-47, 229. Moreover, there is no evidence that Dr. Garn was consulted in any way or participated in any way in the decision to transfer Plaintiff to the Navy Yard. In *Hill*, the Fourth Circuit "decline[d] to endorse a construction of the discrimination statutes that would allow a biased subordinate who has no supervisory or disciplinary authority and who does not make the final or formal employment decision to become a decisionmaker simply because he had substantial influence on the ultimate decision or because he has played a role, even a significant one, in the adverse employment decision." *Hill*, 354 F.3d at 291 ("Regarding adverse employment actions, an employer will be liable not for the improperly motivated person who merely influences the decision, but for the person who in reality makes the decision."). Thus, Penn has failed to demonstrate that Dr. Garn was an actual decisionmaker. Accordingly, Dr. Garn's comments, however characterized, cannot be imputed to Aerospace. Construing the record in the light most favorable to Plaintiff, the Court finds that Plaintiff has not presented sufficient evidence to withstand summary judgment under a mixed-motive analysis.

**C.     Plaintiff's Prima Facie Case**

Having failed to produce direct or circumstantial evidence of discrimination sufficient to defeat Defendant's motion for summary judgment under a mixed-motive analysis, the Plaintiff may also prove discrimination in accordance with the *McDonnell Douglas* burden-shifting framework. *Desert Palace*, 539 U.S. at 101-02; *Hill*, 354 F.3d at 285. Defendant contends that even under this framework, summary judgment is appropriate because Plaintiff has failed to establish a prima facie case of discrimination

and because Defendant has articulated legitimate, non-discriminatory reasons for the contested actions.  For purposes of the instant motion, Defendant concedes that Plaintiff has satisfied the first prong of the *McDonnell Dougals* prima facie case.  In dispute, however, are the remaining three prongs.

1.      Adverse Employment Action

As part of his or her prima facie case, a plaintiff must demonstrate that he or she suffered an adverse employment action. *McDonnell Douglas*, 411 U.S. at 800-04.  Here, Plaintiff's complaint alleges two distinct adverse employment actions:  (1) Plaintiff's transfer to the Navy Yard and (2) Defendant's decision to place Plaintiff in a displaced status that would lead to discharge. *See* Comp. at ¶¶ 25, 38.  Defendant contends that Plaintiff did not suffer an adverse employment action when she was transferred to the Navy Yard or when she was placed in displaced status.

An adverse employment action "is a discriminatory act which adversely affect[s] the terms, conditions, or benefits of the plaintiff's employment." *James v. Booz-Allen & Hamilton, Inc.*, 368 F.3d 371, 375 (4th Cir. 2004) (internal citations omitted).  Not every aspect of an employee's daily work experience constitutes a term, condition or benefit of employment and, therefore, an adverse employment action. *See Peary v. Goss*, 365 F. Supp. 2d 713, 722 (E.D. Va. 2005) ("mere reassignment to a less appealing job does not constitute an adverse employment action" (citations omitted)).  It is not enough that the employee believes that a job reassignment is less appealing or unfair. *James*, 368 F.3d at 376 (citing *Von Gunten v. Maryland*, 243 F.3d 858, 868 (4th Cir. 2001)).  A "reassignment can only form the basis of a valid [employment discrimination] claim if the plaintiff can show that the reassignment had some significant detrimental effect on

her." *Boone v. Goldin*, 178 F.3d 253, 256 (4th Cir. 1999); *see also id.* More specifically, "[a]bsent any decrease in compensation, job title, level of responsibility, or opportunity for promotion, reassignment to a new position commensurate with one's salary level does not constitute an adverse employment action." *Boone*, 178 F.3d at 256-57.

As to the first alleged adverse employment action – Plaintiff's transfer to the Navy Yard – the parties do not dispute that Plaintiff's title, pay and benefits remained the same immediately before and after Plaintiff's transfer to the Navy Yard. Stipulation of Facts at ¶ 21; Penn. Dep., Def.'s Ex. A at 325. Rather, Plaintiff contends that her reassignment is an adverse employment action because it left her with significantly diminished responsibilities and was unlikely to lead to career advancement. *See generally* Penn Decl. at ¶ 9. Plaintiff also contends that the determination of "[w]hether a particular reassignment of duties constitutes an adverse action for purposes of Title VII is generally a jury question." *Burlington Northern R.R. v. White*, 126 S. Ct. 2455, 2417 (2006); *Holcomb v. Powell*, 433 F.3d 889, 902 (D.C. Cir. 2006).

With respect to Plaintiff's first argument, authority in the Fourth Circuit and elsewhere suggests that diminished level of responsibility may amount to an adverse employment action. *Boone*, 178 F.3d at 256-57. Plaintiff contends that she "did not have meaningful work to perform" and that "[n]ominally, [her] 'job' was to review training manuals, but the review only required several hours to complete." Penn Decl. at ¶ 9. However, Plaintiff admits that her job responsibilities included performing QAR functions on surrogate data and that simulated data and software were both available to her at the Navy Yard. Mem. in Opp. to Mot. for Summ. J. at 9; Penn Dep., Def.'s Ex. A, at 318. In light of the record, Plaintiff's conclusory statement in her affidavit is

insufficient to provide a basis for a reasonable jury to conclude that Plaintiff's transfer to the Navy Yard diminished her responsibilities or failed to provide her with meaningful work to perform. *See generally Evans v. Technologies Applications & Service Co.*, 80 F.3d 954, 959, 962 (4th Cir. 1996); *Barwick v. Celotex Corp.*, 736 F.2d 946, 959-60 (4th Cir. 1984).

With respect to Plaintiff's second argument, it is well-settled that opportunity for promotion is a term, condition or benefit of employment which can amount to an adverse employment action. *James*, 368 F.3d at 376; *Boone*, 178 F.3d at 256. Here, however, the record does not contain evidence sufficient to establish a question of material fact as to whether plaintiff's reassignment decreased her opportunity for promotion or career advancement. Instead, the record demonstrates that the employee Plaintiff replaced at the Navy Yard, Lesley Pearson, was promoted while working at the Navy Yard in the very function Plaintiff assumed. Penn Dep., Def.'s Ex. A at 227. Accordingly, the record does not provide a basis for a reasonable jury to conclude that Plaintiff's opportunities for promotion were diminished as a result of her transfer. *See generally Peary*, 365 F. Supp. 2d at 723.

As to the second alleged adverse employment action – Defendant's displacement/discharge decision – Defendant does not dispute that Plaintiff was placed in displaced status, but contends that Defendant never terminated Plaintiff's employment because she voluntarily resigned to accept a higher paying position with BAE Systems. However, a plaintiff may suffer an adverse employment action "without showing that he or she was subjected to an 'ultimate employment decision,' *i.e.*, a firing, layoff, or failure to promote." *Peary*, 365 F. Supp. 2d at 722. Although Plaintiff maintained her pay and

benefits while in displaced status, Stipulated Facts at ¶ 28, it is undisputed that
Aerospace's displaced status policy provides that "[a]t any time during the displacement
period or at the end of 91 days in displaced status, an employee who has not secured
another position is subject to termination by RIF." Displaced Status, Pl.'s Ex. G at § 9.3.
The decision to place Plaintiff in displaced status had a significant detrimental effect on
Plaintiff and impacted Plaintiff's job title, level of responsibility and opportunity for
promotion.

For the foregoing reasons, although Plaintiff's transfer to the Navy Yard was not
an adverse employment action, her placement in displaced status was an adverse
employment action.

2.    Job Qualifications and Performance

Plaintiff must also establish that she was qualified for her job and that her job
performance was satisfactory. A plaintiff's claims fail if her performance did not meet
the employer's legitimate standards. *Gariola v. Va. Dep't of Gen. Servs.*, 753 F.2d 1281,
1287 (4th Cir. 1985); *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998);
*Watson v. Gutierrez*, No. 1:05-cv-1173, 2006 WL 1647116, at *4 (E.D. Va. June 6,
2006).

Here, Defendant contends that after-acquired evidence demonstrates that Plaintiff
was not meeting legitimate job expectations at the time of her assignment to the Navy
Yard or at the time of her displacement. Specifically, Defendant points to a number of
allegedly inappropriate emails sent by Plaintiff over Aerospace's server and Aerospace's
government client's server while at work. *See* Penn Dep., Def.'s Ex. A at 301-302, 313,
322, 324-26, 341, 345, 350, 353. Plaintiff, however, contends that the after-acquired

evidence doctrine may not be used to defeat a prima facie showing. Plaintiff also argues that Defendant failed to plead the after-acquired evidence doctrine as an affirmative defense and therefore cannot assert it now.

The after-acquired evidence doctrine provides that evidence of employee wrongdoing acquired after a discriminatory termination may limit the relief available to the plaintiff. In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995), the Supreme Court held that when an employee is fired for an illegal reason (there, a violation of the ADEA), after-acquired evidence of a legitimate basis for termination does not shield the employer from liability under the violated statute, but instead operates only to limit the relief available. *Id.* at 356 (the *McKennon* Court also made clear that its analysis applied to claims under Title VII). Here, Defendant points to after-acquired evidence to defeat Plaintiff's prima facie case in an effort to avoid liability altogether. As the Court in *McKennon* recognized, after-acquired evidence cannot shield an employer from liability altogether. At this stage, it is the defendant's perception at the time of termination that is important. *See generally Ward v. City of North Myrtle Beach*, 457 F. Supp. 2d 625, 642-43 (D.S.C. 2006). Absent Defendant's reliance on after-acquired evidence, Defendant has not demonstrated that Plaintiff was not meeting her employer's legitimate expectations.

3. Treatment of Similarly Situated Employees

Finally, a plaintiff must also demonstrate that similarly-situated employees outside of Plaintiff's protected class received more favorable treatment. Aerospace contends that Plaintiff has not satisfied this element of her prima facie case. Specifically, Aerospace asserts that the other employees in Plaintiff's department were not similarly

situated to Plaintiff because they had different educational and professional experience.

Mem. in Supp. of Mot. for Summ. J. at 22; *see also Brown v. Triton Sec.*, No. 1:04-cv-

1544, 2005 WL 2708914, at *4 (E.D. Va. Oct. 19, 2005) (plaintiff not similarly situated

with co-workers who had more education and work experience); *see also Siraj v.*

*Hermitage in N. Va.*, 51 Fed. Appx. 102, 112-13 (4th Cir. 2002) ("two parties are

similarly situated if their job requirements are similar in the level of competency,

education and requirements"). In fact, Plaintiff admits she was the only systems

administrator in the GSD department and that she was not qualified for any other position

in the department after the classified program failed. Penn Dep., Def.'s Ex. A at 167,

233-34. Moreover, Defendant's arguments regarding this element of Plaintiff's prima

facie case were not addressed or refuted in Plaintiff's opposition briefs.

Because Plaintiff fails to present sufficient evidence to establish that other

employees who are not members of the protected class received more favorable

treatment, Plaintiff has failed to establish a prima facie case of discrimination. However,

even assuming Plaintiff has established a prima facie case, Defendant has articulated

legitimate, non-discriminatory reasons for the challenged conduct.

## C.    Defendant's Legitimate, Nondiscriminatory Reasons

Where a plaintiff has set forth a prima facie case of discrimination, the defendant

may rebut the presumption of discrimination established by advancing a legitimate, non-

discriminatory reason for the employment decision. Even assuming that Plaintiff makes

out a prima facie case, Aerospace has articulated legitimate, non-discriminatory reasons

for its employment actions: government funding and program cuts. Stipulated Facts at

¶¶ 19, 26. Aerospace's proffered reasons are supported by affidavits from government

personnel. *See* Affidavit of Debra L. Kabiner, Def.'s Ex. H, at ¶¶ 10, 14 ("I advised Ms. Danahy that NGA would not fund the system administration task."; "Because of the failure of the Classified Program, in early 2006, NGA ceased support of all tasks being performed by Aerospace in support of the Classified Program."). "Budgetary constraints or economic concerns are legitimate reasons for the strategic reorganization of a workplace." *Fitts v.Bechtel Savannah River Site*, No. 1:04-23202, 2006 WL 1389818, at *7 (D.S.C. May 16, 2008) (citing *Mereish v. Walker*, 359 F.3d 330, 335-36 (4th Cir. 2004)). Here the evidence establishes that both Plaintiff's transfer to the Navy Yard and her placement on displaced status were the result of a cut-off of government funding. Aerospace therefore has rebutted the presumption of discrimination.

**D.     Plaintiff's Claims of Pretext**

After the defendant articulates a legitimate, non-discriminatory reason for the challenged employment action, the burden shifts back to the plaintiff who must demonstrate that the defendant's proffered reason is mere pretext for discrimination. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255-56 (1981). A plaintiff may do this by showing that the proffered reason is "unworthy of credence" or is false: "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-48 (2000). Indeed, "once the employer's justification has been eliminated, discrimination may well be the most likely alternative explanation, especially since the employer is in the best position to put forth the actual reason for its decision." *Id.* Thus, "[a] prima facie case coupled with probative evidence 'that the employer's explanation is false,' would counsel against

granting the employer summary judgment . . . ." *Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) (quoting *Reeves*, 530 U.S. at 149).

A plaintiff may meet this burden by demonstrating, for example, that the employer's stated reasons are factually unsupported or implausible, that the employer has offered shifting and inconsistent reasons for its decision, or that the employer has failed to follow its own policies or procedures in undertaking the allegedly adverse employment action. *See generally Abramson v. William Peterson College of N.J.*, 260 F.3d 265 (3d Cir. 2001); *Brennan v. GTE Gov't Sys. Corp.*, 150 F.3d 21, 29-30 (1st Cir. 1998); *Thurman v. Yellow Freight Sys., Inc.*, 9 F.3d 1160, 1167 (6th Cir. 1996). Penn contends that Aerospace offered shifting or inconsistent reasons for its decision and failed to follow its own policies when it placed Penn in displaced status.

First, Penn argues that, in its position statement to the County of Fairfax Human Rights Commission, Aerospace initially maintained that funding of the entire CAPE lab had been eliminated, but later maintained that funding was cut only for Penn's position, not for the CAPE lab itself. Mem. in Opp. to Mot. for Summ. J. at 19-20; Pl.'s Ex. F. In its position statement, however, Aerospace specifically states that "government funding for Ms. Penn's duties at Aerospace's Chantilly location was cut, resulting in her transfer to the Navy Yard" and that "NGA therefore notified Aerospace that effective at the beginning of the next fiscal year, October 1, 2006, it would no longer fund the system administrator position for the CAPE lab." Pl.'s Ex. F at 1, 2. Moreover, Penn acknowledges that Aerospace has "generally maintain[ed] that the disputed transfer and displacement decisions were dictated by the government's funding decisions." Mem. in Opp. to Mot. for Summ. J. at 19. Thus, Defendant's stance that Plaintiff's position was

eliminated as a result of government funding decisions has been entirely consistent. Moreover, Plaintiff has not pointed to any evidence in the record to suggest that Defendant's stated reasons were false, *i.e.*, that funding did in fact exist.

Second, Penn alleges that Aerospace has taken different and conflicting positions regarding the timing of the classified program's failure. Specifically, Penn points to Aerospace's position statement where Aerospace states that "In late 2006 . . . the classified Program suffered a catastrophic failure." Pl.'s Ex. F at 3. The position statement continues: "For several weeks, the government engaged in efforts to rectify the problems, but to no avail." *Id.* Penn argues that these statements contradict deposition testimony from Ms. Danahy that "although there were 'problems' with the program in December, 2006, the system did not fail until January or February, 2007." Read together, however, the statements are not inconsistent. Both Aerospace's position statement and Ms. Danahy's deposition testimony make clear that an issue occurred with the classified program in late 2006, but that weeks passed before the government finally concluded that the problems could not be corrected and the program had failed.

Third, Plaintiff also alleges that Aerospace refused to provide training to Penn even after promising such training when she was transferred to the Navy Yard. In her deposition, however, Plaintiff admitted that Aerospace did approve Plaintiff's request to attend a training course. Penn Dep., Def.'s Ex. A, at 395-96. Moreover, any issues regarding the training Plaintiff was promised or provided do not create a question of fact as to whether Aerospace's stated non-discriminatory reasons were its actual reasons.

Finally, Penn claims that Aerospace failed to follow its own policies regarding the placement of employees in displaced status. Aerospace's policy states that:

1. Displaced status occurs when an employee's job has been eliminated as a result of reorganization or has been filled during an employee's leave of absence; job requirements have changed an the employee is no longer qualified to perform the primary functions of the job; medical restrictions prevent an employee from performing the primary functions of the job; or an employee has become disabled and, with or without accommodation, is unable to perform the primary functions of the job.

. . .

5. Displacement is not applicable to a general reduction in force (RIF) or a major contract modification.

Displaced Status, Pl.'s Ex. G. Although Penn argues that the failure of the classified program "would seem to qualify as a 'major contract modification,'" Mem. in Opp. to Mot. to Summ. J. at 21, the record contains uncontroverted evidence that Aerospace placed Plaintiff in displaced status because her "job ha[d] been eliminated as a result of reorganization" and her "[j]ob requirements [had] changed and [she was] no longer qualified to perform the primary functions of the job." Danahy Dep., Def.'s Ex. W at 156-57. Thus, Penn has not pointed to any evidence in the record to suggest that Aerospace failed to follow its own policies or procedures. None of Plaintiff's arguments create a question of material fact as to whether Defendant's proffered explanations for its actions are not the true reasons, but instead, are merely a pretext for discrimination.

**D.    Discovery Disputes**

Plaintiff also argues that Defendant's motion for summary judgment is not properly supported and should not be granted because Plaintiff has not obtained certain discovery regarding Aerospace's programs with the federal government. These issues were previously raised in Plaintiff's motion to compel and argued before Magistrate Judge Thomas Rawles Jones, Jr. on December 5, 2008. Judge Jones allowed Plaintiff to propound ten new general interrogatories and provided the parties with the option to file supplemental briefs related to the pending and fully-briefed motion for summary

judgment.  Order, Dec. 8, 2008 (Doc. No. 54).  Plaintiff did not timely file an objection to

Judge Jones' ruling.  Fed. R. Civ. P. 72(a) (a party must "serve and file objections to the

order" "within 10 days after being served with a copy" of the order).  Failure to file such

an objection in a timely fashion waives the Plaintiff's right to challenge Judge Jones'

ruling.  *Id.*; *see also Wells v. Shiner's Hosp.*, 109 F.3d 198, 200 (4th Cir. 1997); *Giganti

v. Gen-X Strategies, Inc.*, 222 F.R.D. 299, 304 n.8 (E.D. Va. 2004).  Moreover, Plaintiff

did not seek to compel additional answers to the ten interrogatories it propounded

pursuant to Judge Jones' Order.

Given Plaintiff's failure to timely file objections to Judge Jones' ruling, the

arguments advanced in Plaintiff's Memorandum in Opposition to Defendant's Motion for

Summary Judgment and Plaintiff's Supplemental Memorandum in Opposition to

Defendant's Motion for Summary Judgment regarding the information sought in

Plaintiff's motion to compel have been waived.  Plaintiff's discovery arguments,

therefore, do not provide grounds to overcome Defendant's motion for summary

judgment.

## V.  CONCLUSION

For the foregoing reasons, the Court finds that there are no genuine issues of

material fact and that Defendant is entitled to summary judgment as a matter of law.

Defendant's Motion for Summary Judgment therefore is granted.

An appropriate Order will issue.

Anthony J. Trenga
United States District Judge

Alexandria, Virginia
March 6, 2009

22